NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **THE RESIDENCES AT BAY POINT CONDOMINIUM ASSOCIATION, INC.,** *Plaintiff,* v. **CHERNOFF DIAMOND & CO., LLC, et al.,** *Defendants.* | Civil Action No. 16-5190 OPINION |

This matter comes before the Court by way of Defendant Standard Fire Insurance Company's ("Standard") motions to dismiss Defendant/Third-Party Plaintiff Chernoff Diamond & Co. LLC's ("Chernoff") Third-Party Complaint and Defendants/Crossclaimants the Residences at Bay Point, LLC, Albert Dweck and David Schwartz's (the "Sponsors") Cross Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. Nos. 6, 8. For the reasons set forth below, the motions are **GRANTED**.

**I. BACKGROUND**

This insurance dispute arises from damages Plaintiff Residence at Bay Point Condominium Association, Inc. ("Bay Point") sustained during Superstorm Sandy. After unsuccessfully asserting claims against insurer Standard in a prior action in this Court, Bay Point filed suit against its broker, Chernoff, and Sponsors in New Jersey Superior Court, Ocean County. Chernoff and Sponsors then filed a third-party complaint and crossclaims against Standard, which Standard has moved to dismiss.

1

A. **The Policies**

Bay Point is the manager of a Point Pleasant Beach, New Jersey condominium complex called the Residences at Bay Point (the "Residences"), which was damaged by Superstorm Sandy on or around October 29, 2012. Chernoff Compl. ¶ 12, Dkt. No. 1-3. Since 2007, Bay Point purchased Flood Insurance Policies (the "Policies") from Standard that were authorized by the Federal Emergency Management Agency ("FEMA"). Id. ¶ 14. At all relevant times, Standard was authorized to issue flood insurance policies through FEMA's Write Your Own ("WYO") program. Id.

Bay Point's initial Policies with Standard were written on the National Flood Insurance Program ("NFIP") General Property Form, which provides coverage on an actual cash value basis. Id. ¶ 15. In or around 2008, Chernoff became the broker of record in connection with the Policies, which were renewed without change. Id. ¶ 16. In 2009, after the Residences became a condominium, it requested that the Policies be amended to provide for reimbursement on a replacement cost basis. Id. ¶ 17. So Chernoff submitted an application to Standard for the policy to be written on the NFIP Residential Condominium Building Association Policy ("RCBAP") form, which provides coverage on a replacement cost basis. Id. ¶ 18. Standard made the requested change. Id. ¶ 19.

Subsequently, Bay Point informed Chernoff that it no longer wanted coverage using the RCBAP form. Id. ¶ 19. Chernoff informed Standard of the requested change, and Standard then re-wrote the coverage back to the General Property Form. Id. ¶ 24-25. Chernoff alleges that Standard failed to advise Chernoff that the RCBAP form was required for the Property, pursuant to FEMA regulations, and that the General Property Form was therefore inappropriate for the Property. Id. ¶ 26-27.

**B. Superstorm Sandy Loss**

On or around October 29, 2012, the Property was damaged by Superstorm Sandy. Bay Point submitted claims to Standard under the Policies in connection with its loss. Id. ¶ 38-39. Chernoff alleges that in response—for the first time—Standard informed Bay Point that the Policies were wrongfully written on the General Property Form, and should have been written on an RCBAP form. Id. ¶ 40. Accordingly, Standard reformed the policy to the RCBAP form, and applied a co-insurance policy to the loss. Id. ¶ 43. Bay Point alleges that the application of the co-insurance penalty resulted in a recovery that "did not offer adequate or fair compensation for the damages caused by the storm." Bay Point Compl. ¶ 21, Dkt. No. 1-1. Specifically, Bay Point alleges that it was penalized $361,696.87 in co-insurance fees. Id. ¶ 23.

**C. Procedural History**

The sequence of events leading to the instant motions before the Court began in 2013 when Bay Point filed a lawsuit in this Court against Standard, Chernoff, and Sponsors. Bay Point asserted a federal contract claim and state negligence and fraud claims arising from Standard's reformation of the Policies and subsequent application of co-insurance penalties to its Superstorm Sandy loss. Id. ¶ 3.

In an opinion and order dated December 4, 2013, the Hon. Freda Wolfson, U.S.D.J., dismissed the federal contract claims against Standard as to two of the four allegedly damaged buildings, holding that Standard was correct to use the RCBAP form and apply the co-insurance penalty. See Residences at Bay Point Condominium Ass'n, Inc. v. Standard Fire Ins. Co. et al., No. 13–02380, 2013 WL 6252692 (D.N.J. Dec. 4, 2014) ("Bay Point I"). The Court also dismissed Bay Point's negligence and fraud claims as preempted by the National Flood Insurance Act. Id. at *16. Following the filing of an Amended Complaint, the Court dismissed the federal contract

claims as to the two remaining buildings. See Residences at Bay Point Condominium Ass'n, Inc. v. Standard Fire Ins. Co. et al., 41 F. Supp. 3d 427 (D.N.J. 2014) ("Bay Point II"). The Court declined to exercise supplemental jurisdiction over the state law claims against Chernoff and Sponsors. Id. at 442. Instead of pursuing an appeal of the District Court's decision, Plaintiff Bay Point initiated a separate lawsuit solely naming Chernoff and Sponsors in New Jersey Superior Court, Ocean County in September 2014. See Bay Point Compl., Dkt. No. 1-1.

Meanwhile, Chernoff appealed Bay Point I and Bay Point II. The Third Circuit dismissed Chernoff's appeal, holding that it lacked standing because it had not asserted claims against Standard in the District Court action. Residences at Bay Point Condominium Ass'n, Inc. v. Standard Fire Ins. Co. et al., 641 Fed. App'x 181, 184 (3d Cir. 2016).

Following the Third Circuit's dismissal, Chernoff filed a Third-Party Complaint in the New Jersey Superior Court action, asserting various state claims against Standard and FEMA. See Chernoff Compl. These claims include: (1) negligence; (2) common-law contribution and indemnification; (3) joint tortfeasor's contribution; (4) apportionment of liability; (5) equitable estoppel; (6) declaratory judgment that Standard improperly applied the co-insurance deductible; and (7) statutory indemnification. Id. ¶¶ 51-81. Chernoff seeks recovery for the costs associated with defending Bay Point I and Bay Point II, and the costs of prosecuting the third-party action. Id. ¶ 54.

Sponsors then filed a crossclaim against Standard and FEMA, asserting claims for: (1) common law indemnification or contribution; (2) joint tortfeasor's indemnification; and (3) direct liability to the Sponsor Defendants. See Sponsor Compl., Dkt. No. 1-4. FEMA then removed the action to this Court on the basis that it is a federal government agency pursuant to 28 U.S.C. §

1442(a)(1).[1]  See Notice of Removal, Dkt. No. 1.  Standard moved to dismiss Chernoff and the Sponsor's complaints.  Dkt. Nos. 6, 8.

## II. DISCUSSION

### A. Federal Preemption

Standard argues that most of Chernoff's claims[2] and all of the Sponsors' cross-claims are expressly preempted by federal law as extra-contractual claims against a WYO insurer.  The Court agrees.

The National Flood Insurance Act of 1968 ("NFIA"), 42 U.S.C. §§ 4001–4129, established the National Flood Insurance Program ("NFIP") in order to provide flood insurance at reasonable rates through federal funding.  42 U.S.C. § 4017 (2003); see also Van Holt v. Liberty Mutual, 163 F.3d 161, 164 n.2 (3d Cir. 1998).  Under the NFIA, FEMA is permitted to implement the program either by issuing its own flood insurance policies, or by authorizing private insurance companies to implement the policies as agents of the United States.  Id. §§ 4071(a), 4081.  To this end, FEMA established the WYO program, which allowed private companies to issue policies in accordance with the terms of the NFIP.  44 C.F.R. § 62.63.  As such, WYO companies are required to adjust claims in accordance with the terms of the Standard Flood Insurance Policy ("SFIP").  See Bay Point I, 2013 WL 6252692, at *10 (holding that WYO insurer Standard was obligated to follow FEMA Claims Manual).  WYOs handle all administration of the policies, including adjustment, settlement, payment, and defense of claims, with the federal government acting as a financial guarantor.  44 C.F.R. § 62.63.

---

[1] Sponsors have since voluntarily dismissed claims against FEMA, Dkt. No. 14 , but Chernoff has not.
[2] Standard asserts that Chernoff's causes of action for negligence, contribution and indemnification, apportionment of liability, and equitable estoppel (Counts I-V, VII) are preempted.

5

In 2003, FEMA revised the SFIP to include a provision on jurisdiction. It reads:

> This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968 . . . and Federal common law.

44 C.F.R. pt. 61, app. A(2), art. IX. Standard argues that this provision expressly preempts the non-contractual claims asserted against them as they sound in claims handling.

In general, federal courts recognize that claims sounding in policy "handling" are preempted. See C.E.R. 1988 Inc. v. Aetna Cas. And Sur. Co., 386 F.3d 263, 272 (3d Cir. 2004) (holding that a matter arising from the adjustment of a claim was preempted by conflict preemption by the NFIA); Grissom v. Liberty Mut. Fire Ins. Co., 678 F.3d 397 (5th Cir. 2012) (negligent misrepresentation claims in handling by policyholder are preempted by NFIA); Gibson v. Am. Bankers, 289 F.3d 943, 949 (6th Cir. 2002) (state law claims for breach of contract and breach of fiduciary duty were "clearly preempted by NFIA"). While the Third Circuit has expressly declined to decide whether such preemption also extends to claims over policy "procurement," C.E.R., 386 F.3d at 272, n.12, federal courts in general have distinguished between claims sounding in procurement and claims sounding in handling. See Campo v. Allstate Ins. Co., 652 F.3d 751, 757 (5th Cir. 2009) ("federal law does not preempt state-law procurement-based claims"); Reeder v. Nationwide Mut. Fire Ins. Co., 419 F. Supp. 2d 750, 758 (D. Md. 2006) (noting a "critical distinction between claims seeking recovery under the SFIP—which are preempted—and those arising from alleged misrepresentations made during the procurement of the policy—which are not") (internal quotations omitted). Accordingly, at least one court in this district has declined to dismiss on preemption grounds. See Danho v. Fidelity Nat. Indem. Ins. Co., No. 13-4547, 2013 WL 5411195, at *5 (D.N.J. Sept. 26, 2013) ("the Court cannot at this time conclude that Plaintiff's state law claim of negligent misrepresentation in the procurement of a flood insurance policy is federally preempted") (citing Spence v. Omaha Indem. Ins., 996 F.2d 793 (5th Cir. 1993)).

In Bay Point I, the Court held that the state tort claims asserted against Standard were grounded in policy handling, and thus subject to preemption. There, the Court considered Bay Point's arguments that the claims from the reformation and renewal of the policy sounded in "procurement" rather than "handling." Bay Point I, 2013 WL 6252692, at *15. Relying on the Fifth Circuit's opinion in Grissom, 678 F.3d 397, the Court noted that "the status of the plaintiff's coverage at the time of the adverse interaction with defendant WYO company determines whether a claim arising from that interaction relates to claims handling or policy procurement." Id. (citing Grissom, 678 F.3d at 401 ("The key factor to determine if an interaction with an insurer is 'claims handling' is the status of the insured at the time of the interaction between the parties.")). The Court noted that in contrast to claims that arise in "procurement," Bay Point's claims arose while Bay Point had an existing relationship with Standard. Id. at *14 (citing Campo v. Allstate, 652 F.3d at 756 (claim against WYO company sounded in procurement where plaintiff's "only relationship with Allstate was that of both a former and a potential future policyholder.")). Although Bay Point asked for a change from the RCBAP policy back to the General Property Form, it did not contemplate severing its relationship with Standard. The Court held that because all of Bay Point's buildings were covered by an SFIP during the relevant period with no break in coverage,[3] its claims firmly related to "handling." This Court sees no reason to depart from such reasoning now.

---

[3] In its opposition brief, Chernoff contends that "[t]he conduct complained of occurred at the time that Standard cancelled Plaintiff's RCBAP policies to re-write them onto General Property forms. To be clear, at the time Standard cancelled the policies, there was no coverage in place for Plaintiff." Chernoff Br. at 18. However, Chernoff did not make these allegations in its Complaint. In its Complaint, Chernoff alleges that it at one point asked Standard to "cancel[]" the General Property Form—not the RCBAP Form. Chernoff Compl. ¶ 19. Chernoff does not allege that the General Property Form was ever actually cancelled. Chernoff then alleges that the Policy was rewritten from the RCBAP Form to the General Property Form, but not that it was cancelled. Id. ¶ 25. Moreover, in Bay Point I, the Court already made the factual finding on summary judgment

7

Chernoff and Sponsors argue that their allegations are distinct from Bay Point's allegations in Bay Point I, and therefore are grounded in procurement rather than handling. This is unavailing. Like Bay Point I, the instant matter stems from Standard's alleged negligence during the policy reformation and renewal process, when Bay Point requested its policy to be written on the General Property Form instead of the RCBAP Form. Chernoff alleges the wrongful conduct occurred when "Standard failed to advise Chernoff that the RCBAP Form was required for the Property and allowed Plaintiff to continue with its coverage under the General Property Form." Chernoff Compl. ¶ 26.[4] Such allegations are nearly identical to those considered in Bay Point I. There, Bay Point alleged that "Standard breached [a] duty owed to plaintiff by selling plaintiff four General Property policies in place at the time of the occurrence which it now states cannot or will not be honored." 2013 WL 6252692, at *13. Simply put, both claims involve an allegation that Standard should have known better than to provide Bay Point a General Property policy. The Bay Point I court held that the claims there "fall squarely in the category of claims handling," as do the claims here. Id. at *15.

Chernoff and Sponsors argue that even if their claims do sound in "handling," they are not preempted because they are third-party, non-signatories to the disputed policies. Therefore, their claims "are not governed by the NFIA or associated FEMA regulations." Sponsors' Opp. at 12, Dkt. No. 20. The Court disagrees.

---

that the "Residences at Bay Point were 'covered and in the midst of a non-lapsed insurance policy' at the time Standard reformed the General Property SFIPs to the RCBAP form, at the time of Plaintiff's flood loss, and at the time of all policy renewals." Bay Point I, 2013 WL 6252692 at *15. Accordingly, Chernoff's arguments that there was no coverage in place for Plaintiff when the RCBAP policies were re-written are unsupported, and will not be considered.

[4] Sponsors defer to Chernoff's factual allegations. Sponsor Compl. ¶ 5.

The language of Article IX is broad. The policy applies to "all disputes arising from the handling of any claim under the policy." 44 C.F.R. pt. 61, app. A(2), art. IX. Chernoff has not provided any regulatory language indicating an intent to limit the scope to suits brought by insureds. As such, the Court will give the regulation its plain meaning.

Applying the plain meaning, other courts have also found that flood insurance disputes brought by and against non-parties are preempted. See D&S Remodelers, Inc. v. Wright Nat'l Flood Ins. Servs. LLC, No. 15-59, 2016 WL 5109948, at *3 (M.D. Tenn. Sept. 20, 2016) (holding the proper plaintiff for cases seeking payment under a SFIP is the insured because "there is no reasonable basis for a third-party contractor to believe that it has the right to hold its customer's WYO carrier directly liable to it under the customer's policy"); Coastal Servs., LLC. v. Standard Fire Ins. Co., No. 14-400, 2015 WL 168134, at *1 (S.D. Miss. Jan 12, 2015) (same); Brown v. State Farm Ins. Co., No. 14-2064, 2015 WL 1137850, at *6 (D.N.J. March 12, 2015) (ruling "there is no provision in the NFIA or FEMA regulations that permits policyholders to sue independent adjusters for claims arising from the handling of SFIPs") (internal citations omitted); Moore & Moore Trucking v. Beard, No. 12-3037, 2013 WL 828344, at *7 (E.D. La. March 6, 2013) (same); Pepe v. Fidelity Nat. Prop. & Cas. Ins. Co., No. 11-3746, 2011 WL 4916290, at *3 (D.N.J. Oct. 17, 2011) (barring claims against "all persons involved in the claims adjustment process"). While none of these cases presents the exact set of facts here, the Court finds their reasoning instructive.

In D&S Remodelers, the district court for the Middle District of Tennessee found that a contractor's suit seeking payment under an SFIP was preempted. The court was "not persuaded that the preemptive effect of the plain language of the SFIP amendment is limited to actions brought by policyholders only." 2016 WL 5109948, at *3. The court stated that it was more persuaded by "the plain language of the SFIP amendment, which reference 'all disputes' arising

9

from the handling of NFIP insurance claims," and by the Fifth Circuit's opinion in <u>Grissom</u> that the focus of the inquiry for preemption should be the status of the insured at the time of the interaction between the parties.  <u>Id.</u>  That reasoning applies with equal force here.

Moreover, deviating from this reading of the regulation creates an undesirable result. Limiting "all disputes" to disputes between policyholders and WYO insurers would give policyholders an alternative path to pursuing claims against insurers.  Instead of directly litigating claims against insurers, policyholders could simply pursue the same or similar claims through third-party intermediaries such as their brokers.  It would thus be inconsistent to hold that state tort claims between policyholders and insurance companies are preempted, but that state tort claims between brokers and insurance companies are not.

Adopting Chernoff and Sponsors' position would also undermine the policy goals of the NFIA as articulated by the Third Circuit.  In <u>C.E.R. 1988</u>, the Court of Appeals held that the NFIA preempted extra-contractual claims on the basis of conflict preemption because "the application of state tort law would impede Congress's objectives."  386 F. 3d at 270.  The primary purpose of the NFIA is to provide affordable flood insurance at below actuarial rates to reduce fiscal pressure on federal flood relief efforts.  <u>Van Holt v. Liberty Mut. Fire Ins. Co.</u>, 163 F.3d 161, 165 (3d Cir. 1998).  Before the enactment of the NFIA, few private insurance companies offered flood insurance because it was unprofitable.  <u>C.E.R. 1988</u>, 386 F.3d at 266.  To keep private insurers in the market—and thus make policies widely available to individuals—Congress developed a system where the federal Treasury underwrites insurance policies.  <u>Id.</u>  Congress also permits FEMA to enter into "arrangements" with private insurance companies to administer the policies. 42 U.S.C. § 4071(a)(1).  To limit the burden on private insurance companies, the Treasury reimburses WYO companies for claims and litigation costs arising within the scope of an

arrangement. 44 C.F.R. pt. 62, app. A., art. III(D)(2). Preemption of all state tort suits—including those brought by third-parties—against WYO companies furthers the goal of fiscal pressure on federal flood relief efforts by eliminating the costs associated with underwriting and defending claims.

Indeed, allowing such state tort suits to proceed would contravene the goal of providing affordable flood insurance. C.E.R. 1988, 386 F.3d at 270. As the Third Circuit noted, one of two negative results would occur:

> If FEMA refused to reimburse WYO carriers for their defense costs, insurers would leave the [p]rogram, driving the price of insurance higher. The alternative, remuneration for losses incurred in such suits, would directly burden the federal Treasury.

Id. Either result could lead to higher flood insurance premiums.[5]

In short, the tort-based claims asserted against Standard are preempted. Accordingly, the negligence, contribution, indemnification, apportionment, and equitable estoppel claims must be dismissed with prejudice.

**B. Declaratory Judgment**

Lastly, Standard contends that Chernoff lacks standing to assert a declaratory judgment action asserting that Standard "improperly applied a co-insurance deductible" under the SFIP. Chernoff Compl. ¶ 78. The Court agrees.

A party must have standing to sue in order to present a justiciable case or controversy to the court. See Valley Force Christian College v. Americans United for Separation of Church and

---

[5] Chernoff argues that its particular claims against Standard sound in "errors and omissions," and would not be reimbursed by the Treasury. As such, Chernoff contends, the claims cannot be preempted. But whether the specific claims here are reimbursed is not dispositive. First, the implication of federal funds is merely one consideration for preemption. Second, as discussed above, even if the claims are not reimbursed, allowing them to proceed as non-preempted would burden WYO companies, undermining the Congressional purpose of the NFIA.

State, Inc., 454 U.S. 464, 471-72 (1982). In order to establish prudential standing, a plaintiff must show, among other things, that it is asserting its "own legal interests rather than those of third parties." Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 804 (1985). Standard correctly argues that as a non-party to the SFIP, Chernoff cannot seek a declaratory judgment that Standard violated the SFIP.

In general, to sue under a contract to which it is not a party, a plaintiff "must demonstrate that he is an intended third-party beneficiary, as evidenced by the intent or words of the . . . contract." Sallee v. United States, 41 Fed. Cl. 509, 514 (1998). In New Jersey, "the intent of the contracting parties is the critical issue in determining whether a third party is a beneficiary with contractual standing." Consult Urban Renewal Dev. Corp. v. T.R. Arnold & Assoc. Inc., No. 06-1684, 2007 WL 1175742, at *4 (citing Broadway Maintenance Corp. v. Rutgers, 90 N.J. 253, 259-60 (1982)). Here, Chernoff has not asserted that it is a third-party beneficiary to the SFIP. Indeed, whether or not a court determines that Standard properly applied a co-insurance deductible has no direct bearing on Chernoff's rights. As Chernoff acknowledges, its causes of action arise from Standard's conduct in reforming and renewing the RCBAP Policies—not from Standard's actions pursuant to the Policies. Chernoff Opp. at 17.

Chernoff contends that the Declaratory Judgment Act provides a basis for standing. Chernoff Opp. at 29. This is incorrect. While the Act does establish an equitable procedure for a federal court to declare the rights and obligations of parties in dispute, the Court must still first conduct a state law analysis of standing. If a plaintiff does not present a valid cause of action, as determined by state law, then this Court has no authority to issue a declaratory judgment remedy. See Zyburo v. Continental Cas. Co., 60 F. Supp. 3d 531, 532 (S.D.N.Y. 2014) (holding Declaratory

Judgment Act did not provide a basis for standing by injured third-party to sue an insurer). Having alleged no other basis for standing, Chernoff's count for declaratory judgment is dismissed.

**III. CONCLUSION**

For the foregoing reasons, the motions to dismiss are **GRANTED**. Third Party Plaintiff Chernoff and Crossclaimants Bay Point, LLC, Albert Dweck and David Schwartz's claims are dismissed with prejudice. Chernoff and Sponsors are granted leave to file a motion to amend to assert non-preempted claims by May 12, 2017. An appropriate order accompanies this opinion.


**Date: April 13, 2017**             */s Madeline Cox Arleo*
                                     **MADELINE COX ARLEO**
                                     **UNITED STATES DISTRICT JUDGE**